**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **RAY A. JOHNSTON,** | : | Bankruptcy No. 05-70016 BM |
| | : | |
| | : | |
| **Debtor** | : | Chapter 7 |
| ****************************** | | |
| **LISA M. SWOPE, ESQUIRE, TRUSTEE** | : | |
| **OF THE BANKRUPTCY ESTATE OF** | : | |
| **RAY A. JOHNSTON,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Adversary No. 05-7008 BM |
| | : | |
| **WASHINGTON MUTUAL HOME** | : | Complaint To Determine Secured |
| **LOANS, INC., CSB BANK, and** | : | Status |
| **JANET L. JOHNSON,** | : | |
| | : | |
| **Defendants** | : | |

Appearances:  Lisa M. Swope, Esq., Plaintiff Trustee
Peter J. Mulcahy, Esq., for Defendant Washington Mutual Homes Loans
Andrew P. Gates, Esq., for Defendant CSB Bank

**MEMORANDUM OPINION**

The chapter 7 trustee asserts that a mortgage debtor granted against real property which he owned at the time with his wife as tenants by the entirety is not "valid" and that, as a hypothetical bona fide purchaser of the property, she consequently may avoid the mortgage in accordance with § 544(a)(3) of the Bankruptcy Code.

Washington Mutual Home Loans, Inc (hereinafter WMHL), assignee of the mortgage, opposes the relief sought by the trustee.

We conclude for reasons set forth in this memorandum opinion that the mortgage presently is not enforceable. The trustee does not, however, qualify as bona fide

purchaser and therefore may not avoid the mortgage on that basis in accordance with §544(a)(3).

## – FACTS –

A tract of land situated in Clearfield County, Pennsylvania, was conveyed to debtor and his wife as tenants by the entirety on August 29, 1994. The deed conveying the property was duly recorded in the office of the Recorder of Deeds of Clearfield County on September 21, 1994.

Debtor granted a mortgage against the property in favor of CSB Bank[1] on June 14, 2001. The purpose of the mortgage was to secure payment of a promissory note in the amount of $84,000 debtor had executed that same day. Debtor's wife, however, executed neither the note nor the mortgage. The mortgage was duly recorded in the office of the Recorder of Deeds of Clearfield County on June 19, 2001.

CSB Bank assigned the mortgage to WMHL on July 2, 2001. The assignment was duly recorded in the office of the Recorder of Deeds of Clearfield County on July 9, 2001.

Debtor's wife had commenced a divorce proceeding against debtor in the Court of Common Pleas of Cameron County, Pennsylvania prior to October 6, 2001. Precisely when the action commenced is not indicated in the record.

Debtor and his wife executed a property settlement agreement in connection with the divorce proceeding on October 6, 2001. They agreed, among other things, that debtor would become the sole owner of the above property. More precisely, debtor agreed to refinance two mortgages against the property in favor of First Financial Bank and CSB Bank

---

[1.] Debtor also executed a second mortgage that same day in favor of CSB Bank in the amount of $19,152.45. That mortgage is no longer at issue in the present proceeding.

and to have his wife's name "removed from the same". He further agreed to pay her the additional sum of $40,000 "to compensate her for the equitable distribution accomplished herein". Debtor's wife in turn agreed to convey her interest in the property as a tenant by the entirety to debtor once her name was "removed" from the prior mortgages. In the event debtor was not able to refinance the mortgages, it was agreed that the property would be sold and that debtor's wife would receive $40,000 from the sale proceeds.

The Court of Common Pleas of Cameron County issued a divorce decree on October 16, 2001, which incorporated the above property settlement agreement into the decree. The divorce decree was filed in Cameron County but not in Clearfield County, where the above real property is located.

No deed conveying the above property from debtor and his wife as tenants by the entirety to debtor individually is of public record in the office of the Recorder of Deeds of Clearfield County. The most recent deed of record is the above deed dated August 29, 1994, conveying the property to debtor and his wife as tenants by the entirety.

At some unspecified time, debtor's wife executed an undated document captioned "Spousal Waiver Certificate", wherein she certified that she had no ownership in the above real property. There is no indication that the document was filed in the office of the Recorder of Deeds of Clearfield County, where the deed dated August 29, 1994, the mortgage of June 21, 2001, and the July 2, 2001, assignment of the mortgage were duly recorded.

On October 27, 2001, debtor's wife also executed a document captioned "Relinquishment of Marital Interest", wherein she relinquished any right, title or interest

she had in the above property under the Pennsylvania Divorce Code by virtue of her marriage to debtor. There is no indication that this document was ever filed in the office of the Recorder of Deeds of Clearfield County.

Debtor filed a voluntary chapter petition on January 7, 2005. A chapter 7 trustee was appointed shortly thereafter. The above real property is listed as an asset of debtor's bankruptcy estate with a declared value of $112,000. WMHL is identified as holding a mortgage against the property in the amount of $81,249.

The trustee commenced this adversary action against WMHL and debtor's former wife "to determine secured status". Count I of the complaint asserts that the mortgage in favor of WMHL is not "valid" and may be avoided by the trustee pursuant to § 544(a)(3) of the Bankruptcy Code. Count II asserts that debtor's former wife has no interest in the above property because debtor has complied with the obligations imposed upon him in the above property settlement agreement.

The trustee and WMHL stipulated at a pre-trial conference that this matter could be decided on a case-stated basis and that a trial was not necessary. They were directed to submit a stipulation of facts and briefs within a specified period of time.[2]

The chapter 7 trustee and WMHL submitted a stipulation of facts within the prescribed period of time. Only the trustee, however, bothered to submit a brief stating her case. WMHL did not do so even after court personnel telephoned WMHL's counsel well after the deadline had passed and inquired whether a brief stating WMHL's case would be forthcoming. Counsel was non-committal. WMHL's inaction indicates that it no longer

---

[2.] Debtor's former wife did not answer the complaint and has not participated at all in this adversary action. We infer from her inaction that she "has no dog in this fight" and is indifferent as to its ultimate outcome.

cares to be heard in this adversary action and is indifferent as to its outcome. We can only speculate as to what WMHL's legal argument would be had it stated its case.

## DISCUSSION

The trustee asserts that the mortgage debtor granted is "invalid" because the property subject to the mortgage was jointly owned by debtor and his wife as tenants by the entirety when debtor granted the mortgage and was never conveyed to debtor individually. Because the mortgage is "invalid", the trustee further asserts that she may avoid the mortgage as a hypothetical bona fide purchaser of the property from debtor in accordance with § 544(a)(3) of the Bankruptcy Code.

We shall address these assertions seriately.

### *Is The Mortgage Held By WMHL "Invalid"?*

It is not disputed that when debtor granted the above mortgage now held by WMHL, the property subject thereto was owned by debtor and his wife as tenants by the entirety. The deed dated August 29, 1994, expressly conveyed the property to them as tenants by the entirety. As of June 14, 2001, when debtor granted the mortgage at issue in this adversary action, no deed of record existed whereby debtor and his wife had conveyed the property as tenants by the entirety to debtor individually.

Husband and wife are treated under the law for most purposes as separate and distinct individuals. Each is *sui juris* and is entitled to own property individually. When they own property jointly, however, they presumably do so as tenants by the entirety. Even though they are separate and distinct individuals, their interests in the property are indivisible. *Sterett v. Sterett*, 401 Pa. 583, 585, 166 A.2d 1, 2 (1960).

Tenancy by the entirety is a type of joint tenancy which is modified by the common-law fiction that husband and wife are but a single person. *Frederick v. Southwick*, 165 Pa. Super. 78, 83, 67 A.2d 802, 805 (1949). Husband and wife are treated as though they are a corporate entity. *C.I.T. Corporation v. Flint*, 333 Pa. 350, 354, 5 A.2d 126, 129 (1939). Each spouse is seised during the marriage *per tout et non my* – i.e., of the whole or entirety – as opposed to a share, moiety or divisible part. *Estate of Bullotta*, 798 A.2d 771, 774 (Pa. Super. 2002), *aff'd*, 575 Pa. 587, 838 A.2d 594 (2003). This type of ownership is reserved exclusively for married couples. *First Federal Savings & Loan Association of Greene County v. Porter*, 408 Pa. 236, 242, 183 A.2d 318, 322 (1962).

In addition to right of survivorship, a tenancy by the entirety is characterized by the unities of interest, title, time and possession. *Estate of Maljovec*, 412 Pa. Super. 80, 84, 602 A.2d 1317, 1319 (1991). Until the marriage ends, whether by divorce or the death of one of the spouses, neither spouse may compel partition of entireties property or sever it by unilateral conveyance nor may affect in any way the survivorship interest of the other spouse. *Napotnik v. Equibank and Parkvale Savings Association*, 679 F.2d 316, 319 (3d Cir. 1982).

A judgment creditor may execute on entireties property only when both spouses are judgment debtors. *Klebach v. Mellon Bank*, 388 Pa. Super. 203, 208, 565 A.2d 448, 450 (1989). Entireties property is immune from process, execution or forced sale by a judgment creditor of only one of the spouses. *Id.* Enforcement of process in such instance would permit the taking of the interest of one spouse to satisfy a liability of the other spouse. *Biehl v. Martin*, 236 Pa. 519, 523, 84 A. 953, 954 (1912).

In an estate by the entirety, each spouse has a contingent expectancy of individual ownership which arises out of the right of survivorship, and which "fastens upon" the property only if the expectancy is actualized. *C.I.T. Corp.*, 333 Pa. at 355, 5 A.2d at 128. A creditor's lien on the expectant interest of one spouse becomes enforceable only if and when the expectancy "ripens into a realized fact". At that point, execution by a judgment creditor is not upon a mere expectancy, but instead is upon an actual estate. *Biehl*, 236 Pa. at 528, 84 A. at 957.

Applying the law concerning tenancy by the entirety to the scant facts stipulated to by the trustee and WMHL, we conclude that debtor's expectant interest of sole ownership of the above real property did *not* "ripen" and that WMHL therefore would *not* be able to execute on the property subject to its mortgage in the event debtor defaulted on his obligation to it.

Unless it provides otherwise, a divorce decree which absolutely terminates the bonds of matrimony also terminates all property rights which depend on the marriage. 23 Pa. C. S. A. § 3503. Divorced individuals generally hold marital property as tenants in common with equal one-half interests. 23 Pa. C.S.A. § 3507(a). There is unity of possession in a tenancy in common, but separate and distinct titles. *Sale of Property of Dalessio*, 657 A.2d 1386, 1387 n.1 (Pa. Cmwlth. 1995).

Instead of unequivocally terminating all property rights arising from the marriage of debtor and his wife, the divorce decree incorporated the terms and provisions of the property settlement agreement arrived at on October 6, 2001. Debtor's wife agreed in one of those provisions to convey her interest in the above property to debtor individually

after debtor obtained financing and satisfied the previous mortgages against the property and also paid her the sum of $40,000.

What little information the parties have provided in our estimation does not warrant a determination that debtor obtained financing and had his wife's name "removed" from prior mortgages and also paid her an additional $40,000. While it is true that debtor executed a promissory note in the amount of $84,000 and granted a mortgage against the property, the mortgage preceded the settlement agreement in time by nearly four months.

We are reluctant to infer from the stipulated facts presented by the trustee and WMHL that the mortgage debtor granted in June of 2001 was intended to satisfy a provision in a property settlement agreement that was not entered into until several months later in October of 2001. Had the parties provided more information concerning this, whether by stipulation or by proceeding to trial, we might have been in a position to conclude with some measure of confidence that debtor satisfied his end of the bargain when he granted the above mortgage.

In addition, we have no basis for concluding that debtor's wife upheld her end of the bargain and conveyed her interest in the property as a tenant by the entirety to debtor. More precisely, there is nothing of record indicating that she and debtor conveyed their interest in the property as tenants by the entirety to debtor individually. We know of no deed, for instance, whereby this was accomplished.

Debtor's wife did, however, execute an undated document captioned "Spousal Waiver Certificate" and another document dated October 27, 2001, captioned "Relinquishment of Marital Interest". The legal effect of these documents on the

enforceability of the mortgage lien of WMHL is not clear. Apparently choosing to proceed in this case "on the cheap", WMHL submitted no brief stating its case, which presumably would have attempted to explain the significance of these documents. WMHL, in other words, left the court to fend for itself on this question.

We conclude in light of the foregoing that debtor's expectant interest in the property subject to the mortgage lien held by WMHL did not "ripen" into sole ownership thereof by debtor. Had debtor defaulted on his obligation to it, WMHL could not have executed on the property as of the time debtor commenced this bankruptcy case.

### Can The Trustee Avoid The Mortgage As A Hypothetical Bona Fide Purchaser?

Our inquiry does not end with the determination that WMHL could not have executed on the property by the time debtor commenced his bankruptcy case. We also must determine whether the chapter 7 trustee *because of this* may avoid WMHL's mortgage as a hypothetical bona fide purchaser in accordance with § 544(a)(3) of the Bankruptcy Code.

Section 544 of the Bankruptcy Code, the so-called "strong-arm provision", provides in part as follows:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
> ....
>> (3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists ....

11 U.S.C. § 544(a)(3).

This provision empowers a trustee in bankruptcy to avoid an obligation of the debtor if the obligation would not have bound a bona fide purchaser at the time debtor commenced his bankruptcy case. *McLean v. City of Philadelphia Water Service Bureau*, 891 F.2d 474, 476 (3d Cir. 1989).

Although the trustee's strong-arm powers are created by federal law, their scope depends on the substantive law of the state in which the property is located at the time of the bankruptcy filing. *MidAtlantic National Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 199 (3d Cir. 1994). If a bona fide purchaser would prevail with respect to a previous transfer, lien, encumbrance or the like, the trustee likewise will prevail and can avoid it. *Id.*, 18 F.3d at 200.

A bona fide purchaser that purchases real property without actual or constructive notice of a prior interest in the property is protected under Pennsylvania law. *Butler v. Lomas & Nettleton Company*, 862 F. 2d 1015, 1018 (3d Cir. 1988). This principle is codified in the Pennsylvania Recording Statute, which provides in part as follows:

> All deeds, conveyances[3], contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell and convey any lands ... situate in this Commonwealth ... shall be recorded in the office for the recording of deeds in the county where such lands ... are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be ... recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment duly entered in the prothonotary's office of the county in which the lands ... are situate, without actual or constructive notice, unless such deed, conveyance contract or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or

---

[3.] Although Pennsylvania law considers a mortgage to be a conveyance, in some contexts and a security interest in others, a mortgage is treated as a conveyance for purposes of actions involving Pennsylvania recording statues. <u>Pines v. Farrell</u>, 577 Pa. 564, 574, 848 A.2d 100 (2004).

> conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim ....

21 P.S. § 351.

A subsequent purchaser of real property having actual or constructive notice of the prior rights of another in the property is disqualified from obtaining the status of a bona fide purchaser. *Long John Silver's, Inc. v. Fiore*, 255 Pa. Super. 183, 189, 386 A.2d 569, 573 (1978). An innocent purchaser of such property for value *without* such notice of the right or interest of a third party, however, acquires the property free and clear of such secret right or interest. *Lund v. Heinrich*, 410 Pa. 341, 346, 189 A.2d 581, 584 (1963). Where one of two innocent parties must suffer, the one whose neglect makes the injury possible must bear the responsibility. *Puharic v. Novy,* 317 Pa. 199, 203, 176 A. 233, 234 (1934).

The purpose of this principle is to discourage secret liens against or secret equities in real property where the holder of the secret interest or lien may record it to secure its permanent record and place it in a position from which those who deal with the property thereafter may learn that the owner of the property does not hold perfect title to the land. *Id. Puharic v. Novy*, 317 Pa. at 202-03, 176 A. at 234.

One has constructive notice of another's interest in real property if one could have inquired of a person in possession of the property or could have inquired of another whom they had reason to believe had knowledge of facts which might affect title to the property. Constructive notice also is provided by what appears in the appropriate indexes of the office of the Recorder of Deeds in the county where the property is located. *Lund*, 410 Pa. at 346, 189 A.2d at 584.

We conclude in light of the facts stipulated to by the parties that a hypothetical bona fide purchaser of the above property from debtor for value would have constructive notice of the mortgage held by WMHL. As a consequence, the trustee does *not* qualify as a hypothetical bona fide purchaser for purposes of § 544(a)(3).

We so conclude because the mortgage debtor initially granted to CSB Bank on June 14, 2001, was duly recorded in the office of the Recorder of Deeds of Clearfield County on June 19, 2001. The subsequent assignment of the mortgage to WMHL on July 2, 2001, also was duly recorded on July 9, 2001. As a result of their recording, any subsequent purchaser of the property would, at the very least, have constructive notice of the mortgage presently held by WMHL. Said bona fide purchaser would at the very least have a duty to inquire and if inquiry is made, said bona fide purchaser would learn of the blemish on the title.

The chapter 7 trustee, *as a bona fide purchaser*, therefore may *not* avoid the mortgage lien held by WMHL. We so conclude notwithstanding our previous determination that WMHL would not have been able to execute on the property as of the commencement of this bankruptcy case had debtor defaulted on his obligations to WMHL.

The trustee probably would not find this conclusion surprising in light of the stipulation that the above mortgage and assignment thereof had been duly recorded. The trustee appears instead to seek to attack and avoid the mortgage held by WMHL on the ground that the public record contains no indication that debtor and wife ever conveyed their interest in the property as tenants by the entirety to debtor individually. No deed to that effect was recorded in the office of the Recorder of Deeds of Clearfield County. For

that matter, neither were the documents captioned "Spousal Waiver Certificate" and "Relinquishment of Marital Interest".

The trustee has cited to no authority for the proposition that, *as a hypothetical bona fide purchaser*, she can avoid a duly recorded mortgage on the theory that the public record does not indicate that the mortgagor who granted the mortgage in the first place was not in a position to do so. As we understand the law in Pennsylvania, a purchaser seeking to avoid a mortgage against property he or she has purchased does not qualify as a bona fide purchaser if the targeted mortgage was duly recorded.

Should there be a legal theory according to which the trustee can avoid a duly recorded mortgage against property of the bankruptcy estate because the mortgagor was not in a position to grant the mortgage, we are not prepared to sally forth on our own and articulate that theory on behalf of the trustee.

We conclude in light of the foregoing that the chapter 7 trustee does not qualify as a hypothetical bona fide purchaser for purposes of § 544(a)(3) of the Bankruptcy Code and therefore may not avoid the mortgage held by WMHL.

An appropriate order shall issue.

> /s/
> **BERNARD MARKOVITZ**
> U.S. Bankruptcy Judge

Dated: **November 9, 2005**

- 13 -

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **RAY A. JOHNSTON,** | : | Bankruptcy No. 05-70016 BM |
| | : | |
| **Debtor** | : | Chapter 7 |
| ***************************** | | |
| **LISA M. SWOPE, ESQUIRE, TRUSTEE** | : | |
| **OF THE BANKRUPTCY ESTATE OF** | : | |
| **RAY A. JOHNSTON,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Adversary No. 05-7008 BM |
| | : | |
| **WASHINGTON MUTUAL HOME** | : | Complaint To Determine Secured |
| **LOANS, INC., CSB BANK, and** | : | Status |
| **JANET L. JOHNSON,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER OF COURT

**AND NOW**, this **9th** day of **November**, 2005, for reasons set forth in the preceding memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that the mortgage held by Washington Mutual Home Loans, Inc. is **NOT AVOIDED** by the chapter 7 trustee.

It is **SO ORDERED**.

                                                              **/s/**
                                      **BERNARD MARKOVITZ**
                                      U.S. Bankruptcy Judge

cm:  Service to be made by Case Administrator on the following parties:
      Lisa M. Swope, Esq.
      Peter J. Mulcahy, Esq.
      Andrew P. Gates, Esq.
      Office of United States Trustee